The first argued case this morning will be Apple et al. v. Gesture, 2023-15-01 and 15-54. Mr. Manhoff? Thank you. Good morning. May it please the Court. The Board correctly struck down the majority of the 949 patent claims, but it incorrectly upheld the pending claims 4, 11, and 18. All we're talking about here, the sole basis on which these three dependent claims were upheld, is a trivial claim limitation requiring the sensor and the camera to be fixed in the claimed device relative to each other. This fixed limitation is both obvious over and inherent in Numazaki. There is no dispute that the purpose of Numazaki's fifth embodiment is to extract only its sensor and camera's common output, and that they have common output if and only if they have and maintain overlapping fields of view. I'm curious that you just mentioned inherency, because I thought your brief talked repeatedly about how you didn't make an inherency argument to the Board, and the Board was improper to go beyond regular obviousness and look at inherency. Why are you arguing inherency now? That's correct, Judge Hughes. We think the proper analysis is obviousness, but we think we can meet both the lower standard of obviousness and the higher standard of inherency, and that's why we argued in our brief that as to the excluded reply material, even under an inherency analysis, it would be material because we think it can show inherency. So we're merely arguing that we would learn under both standards. So can you just, as far as I can tell, I'm just going to look at claim 4 because I think it is just as representative as the other two, right? In your petition, under the fixed portion, you have basically two sentences. How do those, those two sentences are pretty vague, too, aren't they? They don't even use the, unless I'm missing something, they don't even use the word fixed in the explanation of why these references show the sensor being fixed in relation to the camera. So, I mean, I understand that your expert came in and later explained why that's what this meant, but don't you have to do a little bit more for the Board to understand your argument? So I agree that we could have been more explicit, but I think fairly read, we did put obviousness to this claim limitation at issue. If you look at Appendix 156, where Claim 4 is discussed, this is the passage you're discussing, it starts by referencing back to its prior discussion of Limitation 1A, which is the forward-facing portion limitation. So it's incorporating that discussion, and then it mentions that it calls out here specifically that they have overlapping fields of view, which is also an integral part of that prior discussion. Does any of that prior discussion note that they're fixed? It doesn't use the word fixed, but it fairly puts it at issue. I think if you look at Appendix 146, this is perhaps the critical part of that. At the top of the page, it says that the two outputs must have overlapping fields of view for one to define what is extracted from the other. So must is conveying fixedness. It must. It's not that it's incidental that they have overlapping fields of view or that they can shift in and out. They must have overlapping fields of view. And then there's that image from Figure 48 showing the complete superimposition of the two outputs, the original image in the basket. Does overlapping necessarily lead to fixed? Couldn't it be overlapping in different degrees but not necessarily fixed? So I think you are getting at Jester Technology's expert in his deposition. He conceded at Appendix 1809 that there needs to be a maintenance of overlapping fields of view. So he concedes that point, but then he says that you don't have to have complete overlap. You could have some overlap. So I think there's two points that are important here. First, it depends on the framework. If we're talking about obviousness, that testimony doesn't matter because he conceded that fixing it would ensure the purpose of the invention, and it just falls under the Google case. This is just a readily achievable way of realizing the goal of the reference. But if we're under an inherency standard, I think what you mentioned is relevant, but it just creates two factual questions that the board needs to resolve that it didn't resolve. First, the board never made a fact finding to credit one expert over the other. Our expert said the opposite. He said that it needs to have complete overlap. It wouldn't work otherwise. Jester Technology said it could be partial overlap. There was no finding as to who was correct about that to achieve the purpose. So that, at a minimum, would require a vacater and remand for the board under an inherency analysis to consider. The second thing is fixed wasn't construed, and the plain and ordinary meaning of fixed, they need to decide whether that encompasses what Jester Technology's expert testified about. How much discretion does the board get on interpreting the petition and what it raises sufficiently? What standard review do we apply to their decision on that? So I think the core photonics case that this court issued recently, it's cited in our response reply brief, sort of walks through the standards here. It talks about abuse of discretion as to evaluate whether an argument is responsive to another side's argument. But it talks about a de novo standard when it's purely trying, when the court is assessing whether there's just a new ground being raised that wasn't in the petition. So I don't think this court has squarely confronted the issue, but it has suggested that this court can sort of work. Well, on the responsiveness stuff, I think you're clearly, I mean, it seems like to the extent this raised the fixed thing, your argument, your expert is just further responding to it. But I'm just curious as to what standard of review do we apply to the board's determination that you actually didn't raise that argument sufficiently for it to address it in these sentences? So I don't think this court has answered that question. But even if it's an abuse of discretion standard, we went under that because, again, I think if you look at 146, so first looking at Appendix 34, which is where the board sets forth what it says, it just considers the mere fact that they're overlapping, doesn't consider the purpose at all. And then it goes on on Appendix 35 to say that the portions of the petition cited in the reply discuss overlapping fields of view, but do not assert that overlapping fields of view require the structures to be fixed with respect to one another. That's not correct. In fact, if you look at 146, the sentence I read to you, the two outputs must have overlapping fields of view for one to define what is extracted from the other. Let me tell you how I understand this. And there's a question of whether this has been sufficiently articulated before the board. But as I understand, it was Aki that takes these photographs 30 times a second, right? So if you have to have overlapping fields of view, which everybody agrees, it would seem as though the two cameras would have to be fixed during the period of the photography. You can't change them relative to each other within that very short time period that's involved in taking the photographs. And nobody asked for a construction, so it would appear that having them fixed in relation to each other in the period that the photographs are taking place is all that's required to be fixed. So their expert testified that fixed would mean, as I understand it, they don't move in relation to each other during the process of photography. So isn't it clear from Numazaki that the two cameras are not moving relative to each other during the period of photography? It seems to follow necessarily. Now, did you make that argument sufficiently? That's another question. So I agree with you on what Numazaki discloses. All disclosure points to it being fixed for that period, and really any period, because, again, they have to be together for them to operate. So even when it takes a separate picture, they always need to be together. Well, if the pictures were five minutes apart, then the cameras could move as long as they had a shared overlap. But it seems, given the speed with which this happens, that there's no opportunity to move the cameras. And if they did move, that would defeat the purpose of what's trying to be achieved. I understand what you're saying. And I think our expert provided evidence further to sort of permanent fixedness, but I agree that even that minimal amount is sufficient. And I do think we raised it in our petition. Again, this challenge was made under the header of obviousness. At 156, we pointed to the overlapping fields of view, and we referenced back to this discussion at 146. I think that fairly raises that fixedness is disclosed by the overlapping fields of view and the need for those overlapping fields of view to achieve the purpose of the invention and to conclude otherwise would to parse the petition with too fine a filter. But I think also I want to be clear that it's not clear what the board really did here. The board didn't say exactly what it thought. It just said that the petition does not establish sufficiently that Numizaki's unit 102 and camera 351 are fixed relative to one another. And all it rested on for that conclusion is, without more, the mere fact that unit 102 and camera 351 are arranged in parallel and have overlapping fields of view does not establish that the structures are fixed. So even if the board thought the petition wasn't sufficient to prove the point, that's not enough, because on a ply, you can come forward with more evidence. So it didn't say that we put forward an insufficient theory such that we couldn't prove it later by supplementing with evidence. It didn't say that. It just said these two mere facts aren't enough. That's not all we asserted in our petition, and certainly at the reply stage we were able to come forward with more evidence to crystallize and confirm our theory, and we did. We had the expert testimony from our expert. We had the expert testimony from gesture technology's expert, which the board didn't weigh or consider at all. So at the bare minimum, there needs to be bacon and remand for clarity on what the board thought it was doing and to make the relevant determinations. But certainly if we're in the land of obviousness, I think as a matter of law, there should just be a reversal under the Google case and the Western Union case we cited in our response reply brief. I think this is just a clear case of obviousness. You have a readily achievable option. Nobody's disputing that fixedness was known. I mean, if you look at all the figures in Numizaki from 74 onwards, these are all sort of fixed components in these electronic devices, at least from the diagrams. As Judge Dyke said, just the functionality and the way this works, it doesn't make sense to think of it as anything other than fixed. So there's both expert testimony and there's Numizaki's disclosures that make it obvious, and that was put forward in the petition and further developed on reply. If you're into your rebuttal time, you can continue or save it. I will reserve the rest of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors. Good morning, please, Court. Did you agree that the cameras are fixed in relation to each other if they're fixed during the period that the photographs are being taken, the two photographs are being taken? No, Your Honor, and I was actually planning on addressing that first. I do not. Why do you? So there's really two reasons, the first being that when we look at Claim 4, for example, of the 949 patent, it's a device claim. And so I might agree if that was a method claim and it was discussing a specific moment in time or when a specific step was being performed. But the structure of Claim 4, which depends from Claim 1, is a device claim. So it's describing a portable device. It's describing the camera and the electro-optical sensor in relationship to each other and how they are part of a forward-facing housing. And there's an additional reason to your point about the sort of timing mechanism, if you will, as to how the components work for detecting movement. There are two cameras or electro-optical sensors required, sensors in Umazaki. One is active when the light is on, and then that one shuts off, and then a second unit detects when the light is off. Those images are subtracted from each other. But that is not what is actually being pointed to here for the alleged invalidating disclosure. There's actually a third camera. And so what in the proposed combination here, what's happening is those two sensors are operating to detect gestures. Then there's a separate camera that will actually capture images. And so the issue is that although the claim requires that the separate camera be fixed in relation, and so there's certainly no disclosure there, and there's no need for a fixed overlap between the two. I'm sorry, I'm not following you. We have two cameras in Umazaki. You say there are three. It's actually three. If the two that are taking the photographs are fixed in relation to each other, that would satisfy the claim of the patient, right? No, Your Honor, because in Umazaki, two are detecting a gesture, and then it's the third camera that's actually supposed to be capturing the image. So in terms of, just to give some context, in the claim there needs to be an electro-optical sensor, and that's the device that's detecting the image. Then there's a separate digital camera. In Umazaki, what Apple has pointed to for the electro-optical sensor, something called Reflected Light Extraction Unit 102, there are actually two of those, where one is taking the image with the light on and one is taking the image with the light off. Those are not used for capturing the actual picture as required by the claim. I'm not understanding why, if those two are fixed in relation to each other, why isn't that sufficient? Because Apple pointed to something separate for the digital camera, Your Honor. Apple pointed to something called Visible Light Photo Detection Array 351. So that has to be fixed in relation to at least one of those other sensors. Correct, Your Honor. Correct, Your Honor. And the issue there is… Well, isn't this all happening within the split second? Even if you say that the third camera has to be fixed? It still comes back to the structure of Claim 1, which is essentially… I don't understand what the point of all of this is, though, because, I mean, admittedly what they said in their petition is very fair, but they say that the photo detection array, which is what you say is the camera, right, and this light-extracted units, which is what they're mapping the sensors to, are arranged in parallel. So they're saying that those are fixed. Now you're arguing on the merits that Namazaki doesn't teach it the way the patent describes it, but the problem that we have here isn't that Namazaki doesn't teach it, it's that the board didn't hear all of their evidence, because they didn't consider the supplemental expert report. So, Your Honor, I think there's two maybe separate things. I guess, I mean, are you just jumping to the merits about why this wouldn't be obvious even if the board had considered it? Or because I'm confused why you started here. I mean, I think that the first point is, was the board obligated to consider the additional evidence submitted on the reply? And the board said no, and why is that correct? I did not read the final written decision as expressive saying, no, we did not consider it. To the contrary, I believe that the board did consider it because it listed it. And then further down the decision said that the evidence simply wasn't sufficient. And the board was not required to. But to take a step back, one of the points was whether or not the use of the word parallel in Namazaki actually meant that those devices are sitting there overlapping. Well, where does the board consider that question? It begins on Appendix 33, Your Honor, where the board starts with the decision on institution. And they do not agree that being arranged in parallel necessarily means that the two units are fixed relative to each other. Where does that, that's on 33 or 34? 33, Your Honor. It's the first full paragraph. It starts up there. Further down the paragraph, the board notes our argument that being arranged in parallel would not necessarily mean that they are fixed relative to each other. There's discussion of the statement of the patent on this argument. Where do they deal with it? I mean, at the bottom of 34, they referenced Dr. Baderson's analysis and interpretation, but complained that the petition didn't reference it. And they don't really analyze that. I read this, at least that paragraph, as saying we're not going to consider this because it wasn't sufficiently explained in the petition. If that's the way I'm reading it, and I think that's air, because the petition sufficiently raises the argument, then doesn't it have to go back? No, Your Honor. The petition never raised any expert testimony. The petition doesn't have to raise the expert testimony, doesn't it, under our precedent? It just naturally raises the argument and gives you the obviousness combination, which they didn't do the best job of. Let's assume they did a barely sufficient job. You're allowed to come back in your reply brief with additional evidence. Not new grounds, but additional evidence. Isn't that what this is? It's additional explanation of the ground. Your Honor, it's not additional explanation. It's the first time that Apple ever introduced any of that evidence. And the board's procedures say that the board may disregard evidence that's untimely, particularly evidence... Where did the board say it was disregarding it because it was untimely? It does not express us to that. So they didn't disregard it because it was untimely. They disregarded it because it wasn't in the petition. And we've said that it doesn't have to be in the petition if it's additional evidence in support of the grounds in the petition, as long as you had a sufficient opportunity to respond to it. Did you submit a cert reply in this case? Yes. Did you address the expert supplemental declaration in your cert reply? Yes. So how were you harmed? Why didn't the board address this? We weren't harmed because it was, frankly, an argument that was overcome. Wait, you on the merits think you win, but the board didn't address their arguments on the merits about his supplemental declaration. Again, Your Honor, I disagree because the board doesn't identify that as some of the evidence considered. And then specifically the last full paragraph on Appendix 34, the board is saying the petition is not established sufficiently. And I interpret that as the evidence. They're actually weighing the evidence of supposed obviousness here after identifying all the competing evidence, after substantial discussion of the evidence during the oral hearing. How do you read the final sentence at the paragraph that starts with the petition? It does not reference any such analysis. Referring back to that. The only way I can read it is that we're not going to consider that analysis because the petition didn't reference it. Not that they considered it and rejected it. I mean, if that's wrong, I mean, is that, how would you interpret that sentence? I don't see any other way to interpret it. Am I wrong? I think it's an add-on to the first sentence and as well can be interpreted as them saying we've disregarded potentially. If the board did not consider it, it can also be read as we didn't consider it because it wasn't in the petition, so it's not timely. The board's procedures say that they can do that, particularly with evidence that could have been raised in the petition, which it should have been to establish Apple's case of obviousness. There's nothing that prevented Apple from putting in expert testimony. They put in a 55-page declaration with the petition that covered pretty much every limitation except for the fixed limitation in Claims 411. I mean, if they said it is untimely, then we'd be reviewing it as untimely under an abuse of discretion standard and they would have had to explain why the untimeliness, you know, couldn't be excused because you got a submitted SIR reply and got to address it in oral argument and maybe it wouldn't be an abuse of discretion. But we don't have anything to review on that ground. There's also just simply substantial evidence to support the position that they are not fixed relative to each other. And that's how a person of ordinary skill in the art would have understood it. So why do you think that showing that the cameras in the Misaki are arranged in parallel doesn't show that they're fixed? Why is that? Figure 46 is a block diagram, so the starting point is structural. It's not structural, it's functional. In addition, when we look at Figure 46 in the corresponding text, it's talking about timing. The figure itself has timing coming into the two, sorry, these terms. What page is 46 on? Figure 46 is Appendix 883, Your Honor. It's a block diagram showing function. And each of the two reflective light extraction units shows timing coming in. And so there, what it means, or sorry, the two units show timing coming in. So there, what parallel means is that they're actually operating at the same time, not in serial, where one would be operational and the other wouldn't be. Not physically located in parallel? Correct. And even if they were in parallel, that wouldn't necessarily mean that they are fixed anyway. Counselor, you want to save some time for rebuttal in the cross appeal. You can continue, and of course, if you save it, you may not get to use it if there isn't anything to rebut. So I leave it to you. I have nothing further unless the panel has any further questions. Okay, we will save it for your cross appeal if there's something to cross appeal. Thank you, Your Honor. Sir, thank you, Your Honor. Counsel conceded that the board didn't actually exclude the evidence or argument here before you right now, but also their brief says that, page 31, the board never ruled that any of petitioner's arguments should be disregarded for being untimely. And at page 32, the board never ruled that the arguments contained impermissible new matter. So they have waived that position, which I don't think is reflected in the decision either. So do we even have to decide whether the petitioner raises or not? I mean, this board's decision on this point is very fuzzy to me, but if we agree with what I think your friend was arguing, that the board didn't reject this because it wasn't raised in the petition, they just didn't consider it. If they didn't consider it, that's just an APA violation because they didn't consider the evidence and discuss it properly. Right, so I think at the bare minimum, there would need to be vacate or remand, but I think the actual appropriate course would be reversal. If this court can decide for itself because it's a matter of law, just look at the expert concessions made by Ochoagosa, their expert. I would urge this court to look at 1809 to 1810, but here's the things he said. To satisfy the intended purpose, one could retain the overlapping fields of view. Fixing them ensures that the overlapping fields of view will be maintained. If they're overlapped to begin with and they remain fixed, then they would continue to be overlapping. And he was asked, it's true, to accomplish its goal, the fifth embodiment requires unit 102 and camera 351 to retain overlapping fields of view, correct? I would agree with that. No, you've got to read the OTM question at the bottom of the page. What's that? You've got to read the OTM question at the bottom of the page. OTM? One too many. Oh, yes. Or he says this doesn't show fixed. Right. Well, I think his concessions substantively show, I think they are disclosed in Numizaki, but regardless it shows it would have been obvious because it would have ensured the purpose. And under Gugu and similar cases, where it's an indisputable sort of way to achieve the goal. Can I just take you back? I understand you're arguing on that point. You want us to decide the merits. I'm not sure I'm there yet, but that sentence at the bottom of page 34, I'm still stuck on that sentence. I don't understand how to read that sentence as anything but we're not going to consider this analysis because it wasn't in the petition, despite the seeming concession from the other side that they didn't limit the grounds or the like. So how do you understand that sentence? So you're talking about the petition, however, does not reference. So I think this gets at their sort of misguided focus on inherency. The previous sentence is talking about our disavowal of making an inherency argument, but instead making an obviousness argument. And then the sentence you're referring to says, the petition, however, does not reference any such analysis. So the best way, in your view, to look at it would be the areas they improperly looked at this as an inherency argument and because they didn't treat it as an ordinary obviousness argument, they disregarded evidence that they didn't rule out because it exceeded the scope of the petition, but just because it didn't address the actual inherency argument.  And that's the error. Correct. And I would just say, regardless, that they're just, if it's abuse of discretion and they were saying the stronger thing, that there's just no obviousness theory, that's just, I think, that is an abuse of discretion and they're just wrong that there isn't an analysis by our expert. Again, if you look at 146, that must sentence I read is citing to our expert's declaration. There's no need for an expert declaration at the petition stage, but we had one there. And so I think that is more than sufficient to survive an abuse of discretion review. I do want to get to this idea that... Counsel, your time has expired. Do you have a final statement? No, I would just ask that this court reverse or at the very least vacate and remand. Thank you. Thank you. And I think there's nothing else we have. The case is submitted.